FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   DEC 19 2008   ★

BROOKLYN OFFICE

DOUGLAS R. HIRSCH
FRANCIS BIGELOW
SADIS & GOLDBERG LLP
551 Fifth Avenue
21st Floor
New York, N.Y. 10176

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVAN KARABELAS and JOANNA MADENCIS,<br><br>Plaintiffs,<br><br>vs.<br><br>MAJOR NISSAN OF GARDEN CITY INC. a/k/a VALUE CITY NISSAN a/k/a NISSAN OF GARDEN CITY,<br><br>Defendant. | Case No.: CV 08 5120<br><br>COMPLAINT<br><br>VITALIANO, J.<br><br>AZRACK, M.J. |

Plaintiffs, Evan Karabelas and Joanna Madencis ("Plaintiffs") as and for their complaint, allege as follows:

## INTRODUCTION

1. Plaintiffs institute this action for actual damages, statutory damages, attorneys fees, and the costs of this action against defendant MAJOR NISSAN OF GARDEN CITY INC. a/k/a VALUE CITY NISSAN and NISSAN OF GARDEN CITY ("Defendant") for multiple violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, (hereinafter TILA), and

Federal Reserve Board Regulation Z, 12 C.F.R. § 226, promulgated pursuant thereto, and for violations of the New York General Business Law, section 349.

## JURISDICTION

2. Jurisdiction is premised on 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

## PARTIES

3. Plaintiffs are individuals who reside New York State. Plaintiff Joanna Madencis resides in Queens County.

4. Upon information and belief, Defendant is a corporation organized pursuant to the laws of New York State and resides in Nassau County, at 316 North Franklin Street, Hempstead, New York 11550.

5. Defendant is a franchised Nissan car dealer and sells and finances new and used motor vehicles.

## FACTUAL ALLEGATIONS

6. On or about November 20th, 2008, Plaintiff Karabelas visited Defendant's place of business (the "Dealership") to help his sister Madencis locate and purchase a motor vehicle.

7. Karabelas had seen an advertisement placed by the Dealership offering to sell a used 2008 Nissan Rogue for $17,995, and thought it was worth taking a look.

8. Karabelas arrived at the Dealership on November 20th, met with a salesperson and reviewed the vehicle that was advertised. He told the salesperson that he wanted to come back the next day with his sister Joanna to have her look a the vehicle.

9. The salesperson said that he could not hold the vehicle for Karabelas, unless he made a deposit on the vehicle. He told Karabelas that once he made a deposit, he could hold the vehicle for 24 hours.

10. Karabelas responded by telling the salesperson that he would put a deposit on the vehicle if he lowered the price of the vehicle. They agreed on a purchase price of $16,995 and Karabelas gave him a $500 deposit. They signed a purchase contract (the "Purchase Contract") reflecting their agreement.

11. The next day, on the 21st, Karabelas returned to the Dealership with Madencis. They arrived at the Dealership at about 6:30 to 7:00 PM.

12. Madencis told the salesperson that she liked the vehicle, at which point the salesperson advised that Madencis must purchase and drive the car home that night, because there were people "outside asking for the key". Feeling pressured, Madencis agreed to purchase the car that night.

13. Karabelas then advised that he wanted time to talk to his bank about financing the purchase. The salesperson responded by stating that the financing would be done that night at the Dealership.

14. The salesperson went to prepare the finance paperwork and returned at 9 PM with Leo Vargas, the finance manager. Mr. Vargas held a stack of paperwork, and asked the Plaintiffs to sign everything.

15. Karabelas noticed that one of the documents was a new purchase agreement with a new price for the vehicle.

16. The new purchase contract sought to sell the vehicle to the Plaintiffs for $21,325.98, plus various other additional fees.

17. The Plaintiffs asked Vargas why the price had increased from $16,995 to $21,325.98 and were told that it included "interest".

18. After much discussion, Vargas convinced the Plaintiffs to execute the second purchase contract and to pay $2,500 towards the purchase.

19. Vargas told the Plaintiffs that he obtained financing for them at 7.94% interest over five years. He told them that after a year of payments made by Madencis, he would bring the interest rate down to 5.6%.

20. It was now getting close to 10 PM, the closing time for the Dealership, and the Plaintiffs were being pressured to sign quite a number of documents. The Dealership was turning off the lights and Vargas was telling the Plaintiffs that they had to sign all the documents immediately.

21. Without being able to review all the documents, and under extreme pressure, upon information and belief, the Plaintiffs executed a retail installment contract for a closed ended credit transaction (the "Finance Agreement"). At no time were the Plaintiffs given a copy of the Finance Agreement to review.

22. Rather, Vargas held the Finance Agreement, had the Plaintiffs execute it, and then pulled it away.

23. Before leaving the Dealership, the Plaintiffs asked Vargas for a copy of the Finance Agreement.

24. Vargas refused to give them a copy of the Finance Agreement and told the Plaintiffs that he could not give them a copy because the "banks are closed".

25. He told the Plaintiffs not to worry because he would mail them a copy of the Finance Agreement.

26. The Plaintiffs left the Dealership and took the vehicle that they had purchased.

27. Since November 21st, Madencis has visited the Dealership and called the Dealership multiple times in order to get a copy of the Finance Agreement but Defendant Dealership has ignored her requests and has failed to provide a copy of the Finance Agreement.

## COUNT I

## MULTIPLE VIOLATIONS OF TILA

28. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-27, as if fully set forth at length herein.

29. At all times relevant hereto, the Defendant regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TIL, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

30. 15 U.S.C. section 1631 provides that a creditor shall disclose to the person who is obligated on a consumer credit transaction the information required under this subchapter.

31. Defendant failed to disclose the information required by TILA and failed to disclose it in the form and manner required by TILA.

32. To date, the Plaintiffs have never received a copy of the Finance Agreement.

33. For example, section 1638 provides that the creditor shall disclose in writing the "amount financed", the "finance charge", the "annual percentage rate", as well as other items so that the consumer can make an informed decision regarding the credit being offered.

34. 15 U.S.C. section 1638 also governs the timing of these disclosures and prohibits any conduct that would prevent the consumer from having a meaningful opportunity to review the terms of the credit being offered.

35. The Defendant never provided any written disclosure of the aforementioned terms regarding the credit being offered and has failed to timely provide the Plaintiffs with a copy of the Finance Agreement as required by TILA.

36. Upon information and belief, this is a common practice of Defendant and such a practice manifests a gross and willful contempt for the law.

37. Upon information and belief, the Defendant has either found, or is attempting to find, someone to purchase the Finance Agreement from it, with a "cash price" for the vehicle of $21,325.98.

38. Upon information and belief, the Defendant has violated TILA because the cash price of the vehicle was $16,995, thereby making the "amount financed" inaccurate.

39. As a result of these violations of the TILA, the Defendant is liable to the Plaintiff for actual damages; statutory damages; punitive damages, costs and attorney fees.

## COUNT II
## VIOLATION OF GBL 349

40. Plaintiffs repeat and reallege each and every allegation set forth in paragraph 1-39 hereof.

41. New York General Business Law prohibits the use of deceptive practices in connection with the sale of consumer oriented goods or services.

42. The Defendant represented to Plaintiffs that the increased price contained in the second purchase contract was a result of the "interest" in connection with the financing.

43. This statement was materially false and misleading because the second purchase contract does not contain an interest rate, an interest calculation and does not indicate anywhere in the agreement that "interest" is being charged.

44. Also, upon information and belief, the Defendant never financed the vehicle at 7.94% interest for five years.

45. As a result of these materially false statements, Plaintiffs have suffered actual damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand judgment from Defendant for actual damages, statutory damages, punitive damages, attorney fees, expert witness fees and costs, as well as any other relief the Plaintiffs are entitled to receive.

Dated: New York, New York
       December 17th, 2008

_____
Douglas R. Hirsch (DRH-4172)
Francis Bigelow (FB-8749)
SADIS & GOLDBERG LLP
Attorneys For Plaintiffs
551 Fifth Avenue
New York, NY 10176
(212) 947-3793